UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| KEMOY McDONALD, | ) Index No. 13-CV-1143 |
| Plaintiff, | ) |
| -against- | ) **FIRST AMENDED** |
| | ) **COMPLAINT** |
| THE CITY OF NEW YORK, DET. RICHARD DIETRICH, P.O. JOHN DOE #1 and P.O. JOHN DOE #2, | ) |
| Defendants. | ) **JURY TRIAL DEMANDED** |

_____

### PRELIMIARY STATEMENT

1.   This is a civil rights action in which Plaintiff, KEMOY McDONALD seeks damages for personal injuries sustained as a result of the defendants' violation of his rights as secured by 42 U.S.C. §§1983, 1985 and 1986, and by the Fourth Amendment, Fifth Amendment, Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution, and for rights secured under the laws and Constitution of the State of New York. Plaintiff also sues in traditional tort pursuant to pendent State claims. Plaintiff was deprived of his constitutional and common law rights when the individual defendants unlawfully confined plaintiff, and caused the unjustifiable arrest and prosecution of plaintiff. Plaintiff seeks damages, compensatory and punitive, affirmative and equitable relief, and award of costs and attorney's fees and such other and further relief as this Court deems equitable and just.

THE RAMBADADT LAW OFFICE

## JURISDICTION

2.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343, 1343(a)(3) and (4), this being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.  The amount of damages in controversy is in excess of fifty thousand dollars ($50,000.00), exclusive of interests and costs.

3.     Any claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

4.     The Plaintiff further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.  Jurisdiction of this court for the pendent claims is authorized by F.R.Civ.P. 18(a) and arises under the doctrine of pendent jurisdiction.

5.     The Plaintiff respectfully demands a trial by jury on each and every one of the claims as pleaded herein.

## VENUE

6.     Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(a), (b) and (c) and §1402 (b) because the claims arose in this district.

## PARTIES

7.     Plaintiff, KEMOY McDONALD, are citizens of the United States and at all times relevant hereto, a resident of the State and City of New York, County of Queens.

8.     Upon information and belief, at all times hereinafter mentioned, Defendant, THE CITY OF NEW YORK, ("CITY"), was and is a municipal corporation duly organized and existing under the laws of the State of New York.

9. At all times hereinafter mentioned, Defendant CITY is a municipal entity authorized under the laws of the State of New York to operate and maintain the NEW YORK CITY POLICE DEPARTMENT ("NYPD"), inter alia, which acts as its agents in the area of law enforcement, custodial care and management of criminal offenders, and for whose actions, and the actions of individual police officers employed thereby, defendant CITY was and is ultimately responsible.

10. At all times hereinafter mentioned, Defendant CITY operated, maintained and controlled the NYPD, including all police officers therein and assumed the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the consumers of the services provided be the NYPD.

11. Upon information and belief, at all times hereinafter mentioned, Defendant DET. RICHARD DIETRICH (hereinafter "DIETRICH"), was employed as a Detective by defendant CITY, assigned to the Queen Robbery Squad—Command 347, and as such had a first line responsibility for taking appropriate measures to ensure that proper procedure was followed on all arrest and preserve the constitutional rights of arrestees. Defendant DIETRICH is sued both in his individual and official capacity. At all times hereinafter mentioned, defendant was acting within the scope of his employment with the NYPD.

12. Upon information and belief, at all times hereinafter mentioned, Defendant P.O. JOHN DOE #1 (hereinafter "DOE #1"), was employed as a Police Officer by defendant CITY, and as such had a first line responsibility for taking appropriate measures to ensure that proper procedure was followed on all arrest and preserve the constitutional rights of arrestees. Defendant DOE is sued both in his individual and official capacity. At all times hereinafter mentioned, defendant was acting within the scope of his employment with the NYPD.

13. Upon information and belief, at all times hereinafter mentioned, Defendant P.O. JOHN DOE #2 (hereinafter "DOE #2"), was employed as a Police Officer by defendant CITY, and as such had a first line responsibility for taking appropriate measures to ensure that proper procedure was followed on all arrest and preserve the constitutional rights of arrestees. Defendant DOE is sued both in his individual and official capacity. At all times hereinafter mentioned, defendant was acting within the scope of his employment with the NYPD.

14. Upon information and belief, at all times hereinafter mentioned, Defendant CITY was authorized by New York City Charter and the New York State Constitution to operate and maintain the OFFICE OF THE QUEENS COUNTY DISTRICT ATTORNEY ("QCDA"), which inter alia, acts to protect the public by investigating and prosecuting criminal conduct in Queens County by enforcing provisions of the penal law and other statutes by preparing information and gathering resources for court hearings and presentations at trial. As Defendant CITY's agent in the area of criminal prosecution and enforcement of the New York Penal Code and Constitution, and for whose actions, and the actions of individual Assistant District Attorneys employed thereby, Defendant CITY was and is ultimately responsible.

15. Upon information and belief, at all times hereinafter mentioned Defendant CITY by charter operated and maintained the QCDA, including all Assistant District Attorneys therein.

16. Upon information and belief, at all times hereinafter mentioned, RICHARD BROWN, was and is employed as Queens County District Attorney, and as such had a first line responsibility for taking appropriate measures to ensure that proper procedure was followed in accordance with New York penal law on all arrest and preserve the constitutional rights of arrestees. At all times hereinafter mentioned, D.A. BROWN was acting within the scope of his employment with the QCDA.

17.     Upon information and belief, at all times hereinafter mentioned, Assistant District Attorneys are employed by the QCDA, and as such have a first line responsibility for taking appropriate measures to ensure that proper procedure was followed in accordance with New York penal law and preserve the constitutional rights of arrestees.  At all times hereinafter mentioned, Assistant District Attorneys were acting within the scope of their employment with the QCDA.

18.     At all times relevant herein, each and every individual defendant herein was acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City of New York, at all times relevant herein with the power and authority vested in them as officers, agents and employees of the City of New York, and incidental to the lawful pursuit of their duties as officers, employees and agents of the City of New York.

## STATEMENT OF THE FACTS

19.     In response to a series of robberies that had taken place officers in the Queens Robbery Squad began monitoring cell phone identification signals of phones allegedly stolen during the robberies.  However, all signals being monitored stated 'not in use'[1].

20.     After approximately two (2) weeks of monitoring an identification signal became active.  The signal was traced to a T-mobile number registered to 'Simone Washington' living at 148-33 Brookville Blvd., Queens, New York, NY.  A search of the T-mobile account for Ms. Washington stated that the number and account had been established since 2007.

---

[1] During Det. Dietrich's investigation it was recorded that none of the victims could see what the assailants' faces looked like and could only give a general identification of height, clothing (hooded sweatshirts) and possible hairstyle.

21. On or about March 23, 2010 at approximately 10:30pm, officers from Queens Robbery Squad, led by Det. Dietrich, arrived at 148-33 Brookville Blvd., Queens, New York, NY in search of Simone Washington and rang the doorbell.

22. Kemoy McDonald[2], Ms. Washington's son who resides with her at 148-33 Brookville Blvd., was at home and answered the door.

23. Mr. McDonald answered the door wearing an A-shirt and boxer-shorts, with his cell phone in his hand and spoke to Det. Dietrich through the screen door.

24. After identifying himself, Det. Dietrich stated he wanted to speak to Simone Washington, but she was not home. He asked Mr. McDonald to come out of the house and speak to him on the porch. Mr. McDonald, believing he had no choice, complied and came out onto the porch. Once on the porch, he realized Det. Dietrich was not alone and there several officers standing just of the porch in the shadows.

25. Det. Dietrich saw a phone in Mr. McDonald's hand that resembled the allegedly stolen phone they were searching for, a Samsung 'Behold II'[3]. After seeing the phone he called the number listed on Ms. Washington's T-mobile account. At or about that time the phone in Mr. McDonald's hand rang. On Det. Dietrich's order Mr. McDonald was immediately grabbed by several officers and physically forced off the porch and onto the ground and the phone in his hand forcefully taken away from him. Only after Mr. McDonald was physically seized by the officers was the phone checked and Det. Dietrich confirmed that incoming call was from his cell phone.

---

[2] At this time Kemoy McDonald was a high school graduate attending Globe Institute of Technology on a full Soccer scholarship to obtain a degree in Business Management with Computer Applications; and held a job with 'Coin Wrap', where he was in charge of monitoring and logging several hundred thousand dollars of wrapped coins on a daily basis.
[3] The Samsung Behold II, as carried by T-mobile, recorded more than thirty (30) thousand sales in the New York City area from the time of its launch in 2009.

26. Mr. McDonald was charged with Criminal Possession of Stolen Property, handcuffed and taken to the Queens Robbery Squad to be processed[4].

27. Mr. McDonald was questioned for three (3) hours by Det. Dietrich and gave a statement that stated, 'approximately a week prior he was at a restaurant and guy in a hooded sweatshirt came in with the cell phone for sale; when he put in the SIM card from his current phone and saw that it worked he bought the phone for $50.00'[5].

28. Mr. McDonald was then held for approximately another fifteen (15) hours. There existed a total of eight (8) complaining witnesses who had been victims of the robberies and during this time Det. Dietrich contacted them and informed them that he had a suspect in custody and requested that they appear and try to identify him as one of the individuals who robbed them.

29. Four (4) complainants stated they would attend the line-up; even though all of these witnesses had stated prior to this date that they were unable to identify any of their assailants.

30. Det. Dietrich recorded that two (2) complainants, N. Bartley and T. Barnett, stated that 'although they reported [to him] that they would not be able to ID the Perp's do to the fact that it was dark and the Perp's had hoodies on, they may be able to ID one of the Perp's, they added that since they would see possibly one of the three Perp's in person they would be willing to view'.

31. Mr. McDonald was provided with clothing that was picked out by Detectives acting on orders from Det. Dietrich and made to sit in a line up. Mr. McDonald was made to wear: a hat, dark pants, a hooded-sweatshirt (an item of clothing positively identified by the

---

[4] Mr. McDonald had no prior criminal history and before this night had never been arrested or had an altercation with the police.
[5] At this time Mr. McDonald also made Det. Dietrich aware of his enrollment, attendance and scholarship to the Globe Institute of Technology and his job and duties at 'Coin Wrap'.

THE RAMBADADT LAW OFFICE

victims as being worn by the assailants), and boots.  Mr. McDonald was the only one in the line-up wearing a hooded-sweatshirt.

32. Det. Dietrich and ADA Tubridy were present with the complainants during the line-up viewing.

33. It was recorded that Mr. McDonald was identified by three (3) of the four (4) complainants.

34. On or about, March 24, 2010, Mr. McDonald was subsequently, arraigned and charged with: PL 160.15—Robbery in the First Degree (An armed felony offense) 2 Counts; PL 160.10(1)—Robbery in the Second Degree, 2 Counts; and PL 160.10(2)(a)—Robbery in the Second Degree.

35. Mr. McDonald spent thirteen (13) days in Riker's Island correctional facility.  After his mother took a second mortgage on their home she was able to post bail and he was released[6].

36. On April 13, 2010, Det. Dietrich testified at the Grand Jury on this matter.  During his testimony Det. Dietrich based his testimony on the positive identification of Mr. McDonald, particularly by N. Bartley and T. Barnett, as the basis for his arrest of Mr. McDonald on the Robbery charges[7].  Mr. McDonald was indicted on all charges under Indictment Number: 809/2010.

37. In March 2011 a trial was held on this matter.  During the trial it was learned that not all of the Daily Activity Reports (DAR) were produced and on the ones that were not produced it clearly indicated that the victims stated they could not identify their assailants.  The

---

[6] As a result of the second mortgage Ms. Washington could not keep up the payments and eventually lost her home.
[7] As stated in Det. Richard Dietrich's April 13, 2010, Grand Jury testimony.

THE RAMBADADT LAW OFFICE

DARs and reports also stated clearly that general descriptions received from the victims did not match Mr. McDonald and that this information was known to the Detectives prior to his seizure and arrest.

38.	Additionally, it was discovered through testimony of one of the complaining witnesses at trial, that when Det. Dietrich contacted the victims to appear for the identification line up he gave them Mr. McDonald's name.  It was further discovered through testimony that at least one of the victims' who stated she positively identified him, testified that after receiving Mr. McDonald's name from Det. Dietrich she looked him up on Facebook and saw his picture before appearing at the identification line-up.

39.	On March 7, 2011, after a lengthy jury trial, the indictment against Mr. McDonald was summarily dismissed.

40.	The arrest of plaintiff was made without proper cause or justification and in violation of proper process and procedures as NYPD officers.

41.	The false arrest, false imprisonment, malicious prosecution and civil rights violations of plaintiff by defendants caused him to sustain personal, psychological and emotional trauma[8].

42.	A Notice of Claim was served on the Comptroller of the City of New York and at least thirty (30) days have elapsed since the service of such notice and adjustment and/or payment has been neglected and/or refused.

## **FIRST CAUSE OF ACTION**

### Violations of Plaintiff's Fourth Amendment and
### Fourteenth Amendment Rights

43. Plaintiff repeats the allegations made in paragraphs 1-42 and incorporate those allegations by reference with the same force and effect as if herein set forth.

44. At all times relevant herein, the conduct of all defendants was subject to 42 U.S.C. §§1983, 1985, 1986, and 1988.

45. The conduct of defendants DIETRICH and DOES #1&2, on or about March 23, 2010, acting under color of state law, jointly and severally, in conspiring with each other to cause, in failing to prevent others from causing, and in unlawfully arresting and causing Plaintiff to be imprisoned without probable cause in violation of Plaintiff's right to be free from an illegal seizure under the Fourth Amendment of the Constitution of the United States and to free of a deprivation of liberty under the Fourteenth Amendment of the Constitution of the United States, did undertake with deliberate indifference, intentionally, maliciously and/or with reckless disregard for the natural and probable cause of their acts without lawful justification, and was designed to and did cause specific and serious physical and emotional harm, pain and suffering in violation of Plaintiff's Constitutional rights.

46. WHEREFORE, on this claim Plaintiff demands compensatory damages in the amount of two-hundred fifty thousand dollars ($250,000.00), and punitive damages in the amount of two-hundred fifty thousand dollars ($250,000.00) and for such other and further relief deemed to be just and equitable.

---

[8] As a result of his arrest and prosecution Mr. McDonald lost his scholarship at Globe Institute of Technology and his job with 'Coin Wrap'. Even after his acquittal his was unable to get his job back

## SECOND CAUSE OF ACTION

### Violation of Plaintiff's Fourth Amendment Rights

47. Plaintiff repeats the allegations made in paragraphs 1-46 and incorporate those allegations by reference with the same force and effect as if herein set forth.

48. The seizure of plaintiff by defendant police officers DIETRICH and DOES #1&2 in wrongly grabbing plaintiff off of is property without a warrant and seizing his property without a warrant during the arrest was an objectively unreasonable physical seizure of plaintiff and his property in violation of her rights under the Fourth Amendment to the United States Constitution.

49. WHEREFORE, on this claim Plaintiff demand compensatory damages in the amount of two-hundred fifty thousand dollars ($250,000.00), and punitive damages in the amount of two-hundred fifty thousand dollars ($250,000.00) and for such other and further relief deemed to be just and equitable.

## THIRD CAUSE OF ACTION

### Malicious Prosecution

50. Plaintiff repeats the allegations made in paragraphs 1-49 and incorporate those allegations by reference with the same force and effect as if herein set forth.

51. The acts and conduct of the defendants constitute malicious prosecution under the laws of the State of New York and Fourth Amendment to the Constitution of the United States. Defendants commenced and continued a criminal proceeding against plaintiff. There was actual malice and an absence of probable cause for the proceeding.

because of the nature of the charges that were filed against him.

52. Defendants unlawfully concerted, maliciously conspired, wrongly charged and maliciously prosecuted[9] Plaintiff. Defendant CITY, through its agents, servants and employees, DIETRICH and DOES #1&2 through a concerted effort actively organized and guided the investigation and decision of charges to be filed in the initiation of the criminal proceedings and the unlawful and malicious prosecution.

53. Defendants DIETRICH and DOES #1&2 did knowingly and willingly conspired with each other and agreed to conspire with each other to falsely arrest Plaintiff KEMOY McDONALD without a justifiable basis.

54. Through a recognized and established practice of unscrupulously inflating charges of defendants without just cause to secure convictions defendants DIETRICH and DOES #1&2 wrongly charged Plaintiff Kemoy McDonald with the intent to maliciously prosecute him.

55. The charges were not based upon probable cause, that is, the state of the facts in the mind of Defendants DIETRICH and DOES #1&2 would not lead a man of ordinary caution and prudence to believe, or entertain an honest or strong suspicion that Kemoy McDonald was guilty.

56. Defendants DIETRICH and DOES #1&2 were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York Police Department, which are therefore responsible for their conduct.

57. Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

---

[9] Plaintiff Kemoy McDonald is claiming both federal and state malicious prosecution claims pursuant to the 4th and 14th Amendments. As federal malicious prosecution claims are governed by state law the elements of the claim will be stated as such in this complaint. *Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995)* (citing *Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir. 1989)*.

THE RAMBADADT LAW OFFICE

58. WHEREFORE, on this claim Plaintiff demand compensatory damages in the amount of two-hundred fifty thousand dollars ($250,000.00), and punitive damages in the amount of two-hundred fifty thousand dollars ($250,000.00) and for such other and further relief deemed to be just and equitable.

## FOURTH CAUSE OF ACTION

### False Arrest

59. Plaintiff repeats the allegations made in paragraphs 1-58 and incorporate those allegations by reference with the same force and effect as if herein set forth.

60. The acts and conduct of the defendants constitutes false arrest and false imprisonment under the laws of the State of New York.  Defendants intended to confine plaintiff, and, in fact, confined plaintiff, and plaintiff was conscious of the confinement.  In addition, plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

61.  Defendants DIETRICH and DOES #1&2 were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York Police Department, which are therefore responsible for their conduct.

62. Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

63. WHEREFORE, on this claim Plaintiff demand compensatory damages in the amount of two-hundred fifty thousand dollars ($250,000.00), and punitive damages in the amount of two-hundred fifty thousand dollars ($250,000.00) and for such other and further relief deemed to be just and equitable.

## FIFTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

64.     Plaintiff repeats the allegations made in paragraphs 1-63 and incorporate those allegations by reference with the same force and effect as if herein set forth.

65.     By the actions described above, Defendant CITY through its agents and employees, Defendants DIETRICH and DOES #1&2 committed the wrongful act of negligent infliction of emotional distress, which is a tortuous act under the laws of the State of New York, by:  negligently initiating a proceeding on charges that lack both cause and justification in which it was foreseeable that Mr. McDonald would be imprisoned and confined with individuals who are of a dangerous nature, subject to their torturing and embarrassed among his peers causing him emotional harm and public humiliation.

66.     The defendants' acts were outrageous in the extreme, beyond boundaries of decency and utterly unacceptable in a civilized society.  They resulted in mental and physical injuries to the Plaintiff, the ramifications of which are still felt to the present day.

67.     As a consequence of the foregoing acts, Plaintiff sustained injuries, physical, psychological, and emotional, and was otherwise damaged.

68.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

69.     WHEREFORE, on this claim Plaintiff demand compensatory damages in the amount of two-hundred fifty thousand dollars ($250,000.00), and punitive damages in the amount of two-hundred fifty thousand dollars ($250,000.00) and for such other and further relief deemed to be just and equitable.

## SIXTH CAUSE OF ACTION

### Negligent Hiring, Retention, Training and Supervision

70. Plaintiff repeats the allegations made in paragraphs 1-69 and incorporate those allegations by reference with the same force and effect as if herein set forth.

71. The City of New York and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise Defendants DIETRICH and DOES #1&2 individuals who were unfit for the performance of police duties on March 23, 2010, at the aforementioned location.

72. Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

73. WHEREFORE, on this claim Plaintiff demand compensatory damages in the amount of two-hundred fifty thousand dollars ($250,000.00), and punitive damages in the amount of two-hundred fifty thousand dollars ($250,000.00) and for such other and further relief deemed to be just and equitable.

74. WHEREFORE, on this claim Plaintiff demands that sanctions be imposed against defendants in an amount 'costly enough that it will not be undertaken' up to and including a ruling in Plaintiff's favor.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff demands the following relief jointly and severally against all of the Defendants:

a. Compensatory damages in the amount of $1,500,000.00.

b. Punitive damages in the amount of $1,500,000.00.

c. A court order, pursuant to 42 U.S.C. §1988, stating that the Plaintiff is entitled to the costs involved in maintaining this action, including attorney's fees.

THE RAMBADADT LAW OFFICE

   d.  For such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interest of justice.

Dated: New York, New York
    April 15, 2013

                           /s/ Robert Rambadadt

                           _____
                           Robert Rambadadt, Esq.  (RR 9959)
                           **THE RAMBADADT LAW OFFICE**
                           Attorneys for Plaintiff
                           20 W. 20th Street, 2nd Floor
                           New York, New York 10011
                           (646) 450-8049

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK  )
COUNTY OF NEW YORK)ss.:

    I, the undersigned, an attorney admitted to practice in the Courts of New York State, state that I am member of THE RAMBADADT LAW OFFICE, attorneys of record for the Plaintiff in the within action; I have read the foregoing;

## FIRST AMENDED COMPLAINT

and know the contents thereof;  the same is true to my knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe it to be true.  The reason this verification is made by me and not by petitioner is that deponent maintains offices outside the County in which petitioner resides.

    The grounds of my belief as to all matters not stated upon my own knowledge are as follows:  entire file maintained in your deponent's offices; investigations, etc.

    I affirm that the foregoing statements are true, under the penalties of perjury.

Dated:  New York, New York
       April 15, 2013

_____
          ROBERT RAMBADADT

THE RAMBADADT LAW OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK            Index: 13-CV-1143

KEMOY McDONALD,

                Plaintiff,

    -against-

THE CITY OF NEW YORK, Det. RICHARD DIETRICH, P.O. JOHN DOE #1 and P.O. JOHN DOE #2,

                Defendants.

**FIRST AMENDED COMPLAINT**

**THE RAMBADADT LAW OFFICE**
Attorneys for Plaintiff
20 W. 20th Street, 2nd Floor
New York, New York 10011
(646) 450-8049

TO:

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of the State of New York, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: __04/15/2013_____     Signature: _[signature: Robert Rambadadt]___

                Print Signer's Name: __Robert Rambadadt____

THE RAMBADADT LAW OFFICE